21-519(L)
Kirby v. LaserPerformance (Europe) Ltd.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of August, two thousand twenty-three.

PRESENT:
>    RAYMOND J. LOHIER, JR.,
>    STEVEN J. MENASHI,
>    BETH ROBINSON,
>            *Circuit Judges*.

------------------------------------------------

ESTATE OF BRUCE R.W. KIRBY, EXECUTOR MARGO A. KIRBY,

>    *Plaintiff-Appellee-Cross-Appellant*,

BRUCE KIRBY, INC.,

>    *Plaintiff-Appellee*,

GLOBAL SAILING LIMITED,

>    *Plaintiff*,

>    v.                                                   No. 21-519 (L)
>                                                         21-591 (XAP)

LASERPERFORMANCE (EUROPE) LIMITED, QUARTER MOON, INCORPORATED,

CERTIFIED COPY ISSUED ON 08/18/2023

*Defendants-Appellants-Cross-Appellees,*

KARAYA (JERSEY) LIMITED, INTERNATIONAL SAILING FEDERATION LIMITED, INTERNATIONAL LASER CLASS ASSOCIATION, FARZAD RASTEGAR, VELUM LIMITED ITM SA (ANTIGUA AND BARBUDA), AN ANTIGUA AND BARBUDA COMPANY, LASERPERFORMANCE LLC, DORY VENTURES, LLC,

*Defendants.*

_____

FOR DEFENDANTS-APPELLANTS-CROSS-APPELLEES:   PETER T. FAY (Douglas S. Skalka, *on the brief*), Neubert, Pepe & Monteith, P.C., New Haven, CT.

FOR PLAINTIFF-APPELLEES:   ROBERT KEELER (Wesley W. Whitmyer, Jr., *on the brief*), Whitmyer IP Group LLC, Stamford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Jeffrey Alker Meyer, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 2, 2021, is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this order.

Defendants-Appellants-Cross-Appellees LaserPerformance (Europe) Ltd. ("LPE") and Quarter Moon, Inc. ("QMI") (collectively, "Defendants") appeal from a judgment of the United States District Court for the District of

2

Connecticut (Meyer, *J.*) denying their motion to dismiss and motion for a new trial, and granting entry of judgment in part in favor of Plaintiffs-Appellees the Estate of Bruce Kirby ("Kirby") and Bruce Kirby's namesake company Bruce Kirby, Inc. ("BKI") (collectively, "Plaintiffs").[1] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.[2]

Bruce Kirby designed the Laser sailboat. Plaintiffs licensed the design rights of the Laser sailboat to builders. LPE is subject to the rights and obligations of a 1983 Builder Agreement between Plaintiffs and LPE's predecessor in interest, and QMI is the successor in interest to a builder that entered into a 1989 Builder Agreement with Plaintiffs.

The Builder Agreements required Defendants to pay Plaintiffs royalties for the right to build and sell the sailboats, and also required Defendants to affix two plaques (bearing, among other information, Kirby's name) on their Laser

---

[1] Following Bruce Kirby's death while this case was on appeal, we granted a motion to substitute his Estate as a party. In this order references to "Kirby" may include Bruce Kirby individually or the Estate of Bruce Kirby; "Plaintiffs" refers to BKI and Bruce Kirby or the Estate.

[2] We draw these facts from the parties' stipulations, the district court's findings of fact, and undisputed documents in the record.

3

sailboats. One of these plaques is issued by the International Laser Class Association ("ILCA"), the governing body of the International Sailing Federation ("ISAF"), and was required for a Laser to compete in certain racing events. By separate agreement, BKI gave ILCA authority to issue the ISAF Plaques on BKI's behalf. The other plaque gave design credit to Kirby.

In 2008, Plaintiffs sold their rights to the laser boat design to Global Sailing Limited ("GSL") and transferred to GSL their rights and obligations under Builder Agreements with third parties (such as LPE and QMI). But on November 11, 2008, BKI registered a trademark for the "Bruce Kirby" name; BKI remained the owner of the mark and did not sell it to GSL.

At some point following this 2008 sale, QMI and LPE generally stopped paying royalties pursuant to the Builder Agreements, but continued manufacturing and selling Laser sailboats. In March 2010, Kirby sent a letter to ILCA, requesting that it stop issuing plaques to Defendants due to their failure to make royalty payments. In May 2010, the Builder Agreement with LPE was terminated. At the end of January 2011, QMI made its last royalty payment. Both LPE and QMI continued to sell Lasers with the plaques.

In October 2012 and November 2012, Kirby sent letters to QMI and LPE, respectively, in which he wrote, "You are no longer entitled to obtain plaques or in any manner whatsoever take any action regarding the licensed design (Kirby Sailboat)." *Bruce Kirby, Inc. v. Laserperformance (Eur.) Ltd.*, No. 13-cv-00297, 2021 WL 328632, at *3 (D. Conn. Feb. 1, 2021).[3] On April 23, 2013, when an ILCA rule change went into effect pursuant to which the previously required ILCA plaque was no longer required in order to compete in Laser competitions, both QMI and LPE ceased using the plaques on their Laser boats.

In the meantime, in March 2013 Plaintiffs filed this lawsuit. As relevant here, BKI alleged that QMI committed trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, while Kirby alleged that QMI and LPE both misappropriated his name in violation of Connecticut common law.

The district court entered a judgment for compensatory damages against QMI for $2,056,736.33 in connection with BKI's Lanham Act claim. The court treated as advisory the jury's assessment of damages, and awarded damages based on gross revenues from U.S. sales of Lasers less allowable costs from

---

[3] In quotations from caselaw and the parties' briefing, this order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

5

February 2011, when QMI completely stopped paying any royalties, to April 23, 2013, when QMI stopped using the plaques.

In connection with Kirby's common law misappropriation claims, the court awarded compensatory damages against LPE in the amount of $2,520,578.81, consistent with the jury's award of damages. This award corresponded to LPE's total revenues from sales of Lasers from October 2012 through April 23, 2013. The court did not reduce the sum to account for any costs of production because no evidence of such costs was introduced at trial. In light of the damages already assessed against QMI under the Lanham Act, it awarded Kirby only $1 in nominal damages for QMI's misappropriation.

On appeal Defendants argue that Plaintiffs lack standing, the damage award against BKI was clearly excessive, and the district court erred in finding that QMI willfully infringed Plaintiff's trademark. Kirby cross-appeals arguing that the district court improperly denied their request for an award of pre-judgment interest. We address each argument in turn.

I.  **Plaintiffs' Article III Standing**

"We begin with standing because it is a jurisdictional requirement and must be assessed before reaching the merits." *Vitagliano v. Cnty. of Westchester*, 71

6

F.4th 130, 136 (2d Cir. 2023). "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id*. The district court's refusal to dismiss a complaint for lack of standing presents a legal question that we review without deference to the district court. *Id*.

On appeal, QMI argues that Plaintiffs have "failed to submit proof of injury at trial sufficient to establish standing." Appellants' Br. at 46. It claims that both Kirby and BKI lack standing because they assigned their rights to a third party—GSL. We disagree.

BKI's standing arises from its ownership of the Bruce Kirby mark. *See Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928) (holding that the unauthorized use of a trademark constitutes an injury to the owner of the trademark). And Kirby has Article III standing to pursue a claim for misappropriating his name because misappropriation of an individual's name— a longstanding tort at common law, *see* Restatement (Second) of Torts § 652C—is a cognizable injury under Article III. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (explaining that, in considering whether an injury can support standing,

7

"it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts").

We reject QMI's argument that Kirby and BKI assigned all of their rights to the Bruce Kirby name and mark to GSL and thus lack standing because the district court's finding that BKI owns the Bruce Kirby mark and that Kirby could enforce his right to protect his name is well supported in the record. First, the parties stipulated that BKI owns the Bruce Kirby trademark, and that the mark was registered to BKI on November 11, 2008. Second, the 2008 agreement acknowledges that BKI shall retain its trademark rights and grants GSL only a nonexclusive, perpetual, royalty-free license. And whether QMI was privileged to use the mark based on its agreement with GSL may affect the merits of Plaintiffs' claims but does not undermine their standing.

II. **Common Law Misappropriation Damages Against LPE**

On appeal from a district court's denial of a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure, we review for abuse of discretion. *Restivo v. Hessemann*, 846 F.3d 547, 569 (2d Cir. 2017).

8

LPE argues that the district court erred in denying its motion for a new trial because the jury's compensatory damages award of $2,520,578.81 for Kirby's misappropriation claim was excessive. Specifically, LPE contends that Kirby did not present evidence that *any* purchaser—let alone *every* purchaser—bought a Laser because Kirby's name appeared on a plaque. It argues that Kirby thus failed to introduce sufficient evidence to show that LPE derived any commercial benefit from Kirby's name, or to allow the jury to calculate damages with reasonable certainty.

Kirby testified at trial that if a boat did not have the required plaques bearing his name it would not be eligible to race in Laser races. He explained that the plaques were always affixed in the same place because people would look for them there. He said, "[A]nyone who knew much about the boat and who wanted to race it looked for the plaque. Because the plaque made the boat authentic, it made it a legal Laser." Jt. App'x 108. Therefore, customers would look for the plaques to know whether the sailboat was an authentic and legal Laser, capable of participating in the Laser-specific races. *Id.* at 108.

This evidence is sufficient to support the district court's conclusion that a jury could rationally infer "that a customer would not have purchased a non-

9

compliant Laser—that is, a Laser that did not bear the Builder Plaque with the Bruce Kirby name"—and thus "that any time LPE sold a Laser, LPE commercially benefitted through the use of Kirby's name." *Kirby*, 2021 WL 328632, at *10.

### III. Lanham Act Damages Against QMI

QMI challenges the district court's conclusion that QMI willfully infringed the Bruce Kirby mark, arguing that QMI was authorized to use the mark. QMI contends that the evidence does not support the district court's conclusion that it began willfully infringing the mark in February 2011, when it stopped paying royalties, and it argues that the district court failed to make findings on various factors relevant to the damage calculation.

Although willfulness is not a necessary condition to an award of an infringer's profits under the Lanham Act, it "is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). In this case, the district court made it clear that its damage award against QMI rested on its conclusion that QMI engaged in a willful trademark violation. *Kirby*, 2021 WL 328632 at *12. Thus, if the district court's findings as to whether and when QMI began willfully

10

infringing BKI's mark are clearly erroneous, we cannot uphold the damages award. *See Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (explaining that a court exceeds its discretion when it exercises discretion based on a clearly erroneous factual finding).

In evaluating whether and when QMI willfully infringed BKI's mark, we are mindful of the undisputed evidence that beginning at the time it succeeded to the rights and obligations under the 1983 Builder Agreement, QMI was licensed to use the Bruce Kirby mark, and was, in fact, required to do so. So the question is whether BKI presented evidence that could support the district court's conclusion that QMI was on notice that BKI no longer consented to QMI's use of the mark. Neither of the items of evidence relied upon by the district court—a March 2010 letter from Kirby to ILCA and QMI's February 2011 nonpayment of royalties—supports the court's conclusion that QMI was on notice of BKI's non-consent as early as February 2011.

First, the district court relied in part on Kirby's testimony that in March 2010 he wrote ILCA to ask the organization to stop issuing plaques to QMI due to QMI's nonpayment of royalties. But Kirby testified that he sent this letter to ILCA. He did not testify that he sent a copy to QMI. Moreover, even if the jury

11

could conclude on a non-speculative basis that QMI at some point learned about Kirby's letter, the fact that Kirby did not direct the communication to QMI eliminates any reasonable inference that QMI could have understood the letter as communicating that it was no longer authorized to use the mark. Finally, the letter says nothing about QMI's use of Kirby's name, or Kirby's objection thereto.

Second, in rejecting QMI's arguments on this issue, the district court relied on Kirby's trial testimony that "[w]hen [QMI] stopped paying royalties, they had to stop building boats." Jt. App'x 112. The court essentially concluded that QMI's authorization to use the Bruce Kirby mark ended when QMI stopped paying royalties.

To the extent that Kirby's testimony is intended to suggest that under the Builder Agreement QMI's license to use Kirby's name disappeared at the moment QMI stopped paying royalties, the assertion is contradicted by the terms of the contract. Failure to pay royalties is an event of default under the Builder Agreement, but a default does not automatically terminate the contract and the accompanying rights and obligations. The contract provides that upon a default for failure to pay royalties when due, BKI "may at its option give written notice to Licensee of such event of default, and if Licensee does not cure such default

12

within 30 days of the giving of said notice, this Agreement shall terminate upon [BKI] giving to Licensee written notice of termination on the expiry of such 30 day period." Jt. App'x 179. Even if Kirby or BKI had the authority to enforce the terms of the Builder Agreement in February 2011, they did not give QMI written notice of its default, and they did not purport to exercise an option to terminate the license agreement until October 2012. GSL did not give such notice at all. For that reason, the terms of the Builder Agreement did not themselves put QMI on notice that if it failed to pay royalties its authorization to use the Bruce Kirby mark would immediately expire without any notice or actions by Kirby or GSL.

In sum, BKI presented no evidence that could support the district court's conclusion that QMI was on notice that BKI did not consent to its use of the Bruce Kirby mark as early as February 2011. The earliest a reasonable factfinder could potentially conclude that QMI began willfully infringing on BKI's mark was October 11, 2012, when Kirby sent a letter to QMI stating that its right to build the licensed design was terminated. For the above reasons, we vacate the damages award under the Lanham Act for BKI against QMI, and remand to the district court to reconsider its judgment on the Lanham Act claim consistent with the above analysis.

**IV. Prejudgment Interest**

Under Connecticut law, "the allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court." *W. Haven Sound Dev. Corp. v. City of W. Haven*, 207 Conn. 308, 321 (1988). However, when there is a challenge to "the applicability of [Connecticut General Statutes] § 37–3a," the statute providing for prejudgment interest, "our review is plenary." *Chapman Lumber, Inc. v. Tager*, 288 Conn. 69, 100 (2008).

The Connecticut Supreme Court has explained that an award for prejudgment interest under § 37-3a applies only to certain claims such as "where there is a written contract for the payment of money on a day certain" or where there is "tortious injury to property when the damages were capable of being ascertained on the date of the injury." *DiLieto v. Cnty. Obstetrics & Gynecology Grp., P.C.*, 310 Conn. 38, 49 n.11 (2013). "The purpose of the statute is to compensate the prevailing party for the delay in obtaining money that rightfully belongs to [the prevailing party]." *Gilmore v. Bergin*, No. 95-cv-01838, 1998 WL 1632526, at *12 (D. Conn. Sept. 22, 1998) (citing *Neiditz v. Morton S. Fine & Assocs., Inc.*, 199 Conn. 683, 691 (1986)).

Kirby cross-appeals, arguing that the district court improperly denied the request for an award of pre-judgment interest on Kirby's judgment for misappropriation under Connecticut Law. Kirby contends that "[t]he right in one's name or likeness is a property right" and "that the damages were equivalent to LPE's sales, a figure well known at the time of the misappropriation." Appellees' Br. at 57.

We agree with the district court that the misappropriation of a name in this case is more akin to a personal injury claim than a tortious injury to property; here damages were uncertain until after the jury trial "and were not already payable or being wrongly withheld." *Nelson v. Tradewind Aviation, LLC*, 155 Conn. App. 519, 548 (2015); *see also Gionfriddo v. Avis Rent A Car Sys., Inc.*, 192 Conn. 301, 308 (1984) (noting that "a personal injury claim would not ordinarily constitute a claim for the wrongful detention of money before the rendering of judgment").

\* \* \*

Accordingly, we **AFFIRM** the district court's judgment for Kirby in connection with his common law claim against LPE for misappropriation of name and **VACATE** the district court's judgment awarding BKI damages in

connection with its Lanham Act claim against QMI and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

16